S.L.A. Go ahead, sir. Thank you very much, Judge Cabranes. May it please the Court. At issue in this case, in this appeal, is a distinction between being injured and being sick. Knowing that you are injured starts a period of limitations to run. Knowing that you're sick means that you're sick and you need help. In this case, the magistrate judge recommended that the complaint be dismissed based on limitations and also recommended that Orlando be given leave to replead. No surprise, Orlando did not object to the magistrate judge's recommendations. Since he now had a chance to replead and correct whatever the deficiency was in his initial pleading that raised the limitations, presumably on the face of the complaint. So can I ask, sir? Yes. Being that we – can you point to the parts in the complaint that you think best address or at least rip the idea of a statute of limitation issue as opposed to an equitable tolling issue? I thought paragraphs 8 through 10 probably would be where you would point to. Well, if you're looking, Judge Perez, at the last amended complaint, which is 48 and 49, in the docket, there is – it would be in that complaint, 8 through 10, where it talks about the – having been admitted to the Albany Medical Center and being in the intensive care unit and so forth. But I suggest to you that even on this complaint, there is not enough pleaded that one can say that the person who's drafted the complaint has now drafted into a spot where you have essentially admitted that the period of limitations is run because you were aware that you were injured rather than that you were sick. And I – and I – No, I mean, I understand that argument. Right. I understand that you're saying he knew something was wrong when he went in, but he didn't know that he was actually injured. Right. So your – the way I understand your response to the government's argument that you forfeited the statute of limitations is that he didn't object to the report and recommendation. Can you tell us why that is not waiver? Like, what is the best case or what is the authority you have to support the proposition that an amended complaint supersedes an MJ's finding in an R&R? Well, okay. Let's do it two ways. I think you want me to touch on this, and that is that to begin, Rule 72, which deals with references, which result in R&Rs, only requires someone to object to proposed findings and recommendations. In other words, it's not a matter that a litigant is saying, well, let's grade the magistrate judge's report and recommendation and pick out mistakes. Let's look at the bigger picture in the same way that you're not – you wouldn't be able to appeal from a favorable decision that had bad language in it because you wouldn't be aggrieved. So there's no requirement that someone object at that point. You could object if you want, but since you're granted leave to replied, it wouldn't help much. The other point is a good one, and that's this. You know, in the same way that, well, any pleading that's amended and that supersedes the pleading that was there before. Now, obviously, it doesn't apply here. There are exceptions for admissions and answers and so forth, that if you make a judicial admission and an answer, you can't undo that by doing a new pleading. But in a complaint, and this is from – you know, this is pretty much standard civil procedure. When you amend the complaint, you are now starting afresh with that new document. Now, it would have been nice had the last of the amended complaints included in it some allegations that Orlando, while in the intensive care unit, would have been injured, and perhaps another lawyer might have done it that way. But that's not really the test here, because remember, limitations under Rule 8 is an affirmative defense. Therefore, it is the obligation of the defense to come forward, either by pointing to something in the pleading that is, you know, case dispositive, or in the evidence that says you can't prevail because you knew before September 1, 2016, that you had been injured. And I submit, Your Honor, that that evidence isn't here. Well, Mr. Cole. Yes. I hear all of that, but I'm concerned about what happens next. So after all of that, after the amended complaint, there's then a hearing before the district judge, right? That's correct. And at that hearing, the district judge says, you know, I take it that the accrual date is the date that he went into the hospital, and we're fighting here about equitable tolling. And the entire proceeding occurs on the basis that the complaint, the injury, the cause of action accrued as of that date, and the objection that's being made to a dismissal is that there should be equitable tolling. And that fight goes on. The judge says there is no equitable tolling. The judge then dismisses the complaint on statute of limitations ground. And no one, or by no one, I mean the lawyer at the time for Mr. Orlando never says, wait a minute. What are you talking about? Maybe I do lose on equitable tolling, but I don't need equitable tolling because the claim hasn't even accrued yet. Judge Lynch, I'm on the same page with you. And wouldn't it have been nice if someone had said, you know, Judge D'Agostino, I think the magistrate judge may have gotten you off track here. Yeah. Well, it would have been nice, but the question is really more, isn't it more than a question of what would be nice? The judge is sort of sandbagged into assuming that there's no quarrel about the accrual date and that the only quarrel, the only reason why anyone was contending that the claim survived was because of equitable tolling. I hear you. And I wouldn't call it sandbagged. Well, I mean, it's not like a tactical reason. It's really, you know. It's not that I'm not suggesting there's a tactical reason for doing this. No, no. But, I mean, you understand the relationship between the magistrate judges and the district judges and the district court. And, you know, when something comes in, again, a prisoner case, it's easy to say, well, here's what the magistrate judge suggests, we'll go ahead and hold a hearing on equitable tolling. And, yes, it would have been a lot better if someone had put his hand up and said, you know, Your Honor, there still is this limitations issue outstanding. Because, after all, when you read the transcripts, you can see that Judge D'Agostino truly questioned why we were even having a hearing on equitable tolling. Because he said, well, wait a minute. Once he got out, he was okay. And he was. He was okay.  And so it's unfortunate. You're absolutely right. It's unfortunate no one stood up and said something. But having said that, it's still the defendant's burden to be able to come forward with some kind of evidence and be able to say, here's what you knew, not let the defendant sandbag to your future work the plaintiff on this. Well, I hear that argument. If the, you know, one could say perfectly well that the defendant failed from the showing that would be necessary to have a dismissal on the ground of statute of limitations. The question here, though, is, is that, has that failure been forfeited? Because everyone proceeded. The district judge was allowed to proceed on the assumption that it was agreed what the approval date was and that the objection that Mr. Orlando had made and that his lawyer was now making to the motion was simply equitable tolling. I hear you, except I don't think there was. In an ideal world, yes, the lawyer who represented Orlando at the hearing would have said, Judge D'Agostino, let me suggest that this go a little bit broader than equitable tolling. We've got a limitations issue here. That didn't happen. But I suggest to you that that doesn't create a forfeiture in any way. I'll leave it at that. I'm sorry, Judge DeFranco. My apologies. You see the red light, I get nervous. No, no, it's fine. I understand why you would think that that could be an enforceable command. What exactly is the relief that you're now seeking from this Court, just so we're clear on what do you want us to do? Well, the Court should vacate the judgment, send the case back to the district court, and at that point, the issue that would be before the district court would be limitations as raised as an affirmative defense and on which the defendants have the burden under Rule 8 to prove. I mean, think of it this way, Justice Lynch. Now, if you were trying this case before a jury, given the proof that even that we have now, there's not enough proof to stand up at the end of the defendant's case and say, I'm moving under Rule 50A, and I want a judgment as a matter of law because there's insufficient evidence. I'm sorry. The evidence is so overwhelming that the jury would have to come back and say it's by a limitation. There's a lot of evidence that he is a sick man. There's a lot of evidence that he is in bad shape. There's no evidence, and I mean no evidence, that he knows that he has been injured and, therefore, the limitation stands. But was there not a two-day hearing on this question of what Orlando knew? If you go back and go through the transcript, it doesn't really focus on what Orlando knew. It focused on what his condition was while he was in the intensive care unit. Because, and I — listen, I think Judge D'Agostino is terrific, so I don't want to be critical of her. But I think what happened was there was at least some understanding by the advocates that the focus was on this period in the ICU that, in fact, meant the limitations period didn't start until sometime later. But that's not equitable tolling. Equitable tolling is the entire period is such that you can't bring your lawsuit. And I think there was that kind of basic misunderstanding of what the law is. Yeah, but that's why there's a problem, though, right? Because the hearing was focused on equitable tolling because that was the only objection that was raised to the motion to dismiss. Well, I'm not sure I would quite say that. You remember, even at the time that Orlando is objecting, he's basically saying my suit is timely, which implies limitations, not equitable tolling. It so happens the magistrate judge goes beyond Orlando's basic gut reaction to the thing and says, well, look, he's in the hospital on this day, so limitations begins on July 27, and doesn't — and then comes and says, well, let's see if equitable tolling fits. But what the magistrate judge should have done is say, well, he was in the hospital on this day. And, look, 99 cases out of 100, that's when the limitations period begins. But at that point, there was nothing for Orlando to do himself other than say, no, my suit's not barred. So at this punitive hearing on remand, who has to show what? Well, you could have a hearing on remand if you wish, but keep in mind that that would be the equivalent of a summary judgment motion heard live by a district court, which you look at one of my papers. I cite that Charlie Wright says you could do that. I have to say I've never done it. But it's doable. And then the — at that point, the defendants would have to show that the proof was such on what Orlando knew and when he knew it that a reasonable jury could not find against the defendants on limitations.  To put it another way, isn't your argument really that we should just, in effect, reverse the decision to dismiss the complaint and proceed with whatever needs to be done to bring the case forward toward trial or summary judgment, right? This was not a summary judgment motion. This was all a motion to dismiss on that. That's right. And I think I made the point at some point that perhaps it would have been converted to summary judgment because you are now taking evidence rather than just looking at what was pleaded. I don't use the word reverse. I always use vacate.  Because I try to be much more sensitive with it. It's automatic to the district judge, yes. That was my training. But effectively, it's not that you want there to be a new, different, better hearing. You want, you say there's no need for a hearing because the motion did not adequately raise a statute of limitations defense on the face of the complaint. And that's because there is not sufficient material in the complaint on which to judge the accrual date. That's a good way of putting it. But that's in part because the State, meaning the defendants, would have had to come forward with the evidence to support the defense. Because, you know, I just can't. But that would be done in the normal course. If you're, you know, what you're saying is that the accrual date depends on when the plaintiff was aware or should have been aware that his condition was caused by medical malpractice. Exactly right. It's when he knew or should have known that he had been injured rather than that he was simply sick. And I realize that's very basic, but it's the core of what this appeal is about. And part of your argument is that, as I understand it, is that he couldn't have known when he was fairly lucid and stepping in and out of consciousness and unable to communicate except for in the most basic, you know, I'm in pain, I'm not in pain by blinking or the like. Is that correct? That's correct, with a twist on it that we have to look at the limitations issue through the prism of an affirmative defense, which means it's not that the evidence weighs a little bit one way or the other. It's so overwhelming that there's no longer a jury issue in the case. That argument doesn't really depend on how badly off he was mentally and physically when he got to the ICU, right? Suppose he had been perfectly lucid and suppose he was in terrible pain, but he was lucid, and then they treated it and he quickly recovered. The cause of action on your theory still would not have accrued until such time as someone told him, you realize that this all happened because you were prescribed the wrong medication. Yeah. Or he could have figured that out on his own. That's exactly right. And that's what's unfortunate about the evidence at the hearing, that it really focuses on something other than that. And I think I mentioned in one of the letter briefs, you know, there's no state of mind evidence here of what he knew or should have known or could have known. None of that came out because no one focused on it. I guess I still want to come back to the forfeiture issue to this extent. I mean, if the defendant moves to dismiss on statute of limitations grounds, however defective the motion might be, and the plaintiff says, you got me, I guess you're right, complaint withdrawn, it wouldn't matter, right, whether the defendant had a good motion or a bad motion. And I guess what I'm questioning still is here we have a situation where that motion was made and no one on the defense side at a time when the plaintiff is represented by counsel says, what are you talking about, that objection is never made. But instead there's an argument that, no, no, no, we should defeat this motion on grounds of equitable tolling. Well, keep in mind that the decision of the magistrate judge that talks about this I'm not worried about the magistrate judge. No, no. Here we are before me, a district judge.  And there's a motion before me. The magistrate judge's recommendation is being contested, and it's being contested on the ground that there should be equitable tolling. I've got a motion to dismiss on statute of limitations ground. I've got a report and recommendation from magistrate judge saying you should grant that motion. And I've got somebody standing in front of me representing the plaintiff who never says, no, you should not grant this motion because the statute of limitations period, the clause of action never accrued, the limitations period never began to run, but instead continues to fight the equitable tolling issue. Well, I think you're close, but I think you're off just a little. And that is to say that when that motion was made initially and the magistrate judge's R&R is number 27 in the docket, Orlando was then not represented by a lawyer. And he says it's timely. He says, hey, we're not dealing with someone who, you know, studied under Linda Silberman for civil procedure or something. We're talking about somebody who is doing the best he can. And when that R&R goes to the magistrate judge, she simply adopts it. There's no lawyer intervention. It's only later on when it gets down the road to having a hearing and now a lawyer comes in for Orlando that that lawyer, and look, I could probably make all the mistakes in the world, too, I make a lot of them, doesn't look back and say, you know, Judge D'Agostino, we really ought to be focusing on limitations and not on equitable tolling, because that's really where the case is. Thank you, Mr. Court. Thank you very much, Judge Cabranes. May it please the Court. Sean Mix on behalf of the Apple Leaf. I'd like to start with this forfeiture issue, and I'd like to correct one thing. After the initial motion to dismiss, the opposition to that motion was drafted by an attorney. He wasn't represented at that time, but an attorney did draft an opposition. At that point in time, the motion was dismissed as time barred, and thereafter there was an order from the Court stating that if you are going to file a supplemental complaint, an amended complaint, you need to address these deficiencies. From there on out, it appears to all parties and the Court that Plaintiff had charted a course based on a theory of equitable tolling, hence the need for this evidentiary hearing on that issue, which may or may not have been obviated if there had been any indication that he was challenging this issue of the statute of limitations and whether or not this was time barred. And so to now argue that the district court should have, based on the evidence at the equitable tolling hearing held for an entirely different purpose, noticed that there was potentially an accrual issue when Plaintiff's own counsel didn't raise that argument, that's not appropriate here. That's forfeiture. The district court, that issue wasn't raised before then, and that could have changed the way that the defendants, what evidence they might have brought forward, whether it be in a summary judgment motion about what he knew when he was taking that medication. You know, NYSAs often have a warning about stomach ulcer. Did he, did his prescriptions have those? It would have changed the evidence that defendants had put forward at that time. Plaintiff chose his own course based on a theory of equitable tolling, and that's what the district court decided. And after that evidentiary hearing, he did not raise an issue of whether or not this had, we should delay accrual. So to do so now, it's a very procedurally complicated position for us, because we're looking at evidence on a hearing held for a different purpose, to decide whether or not we should delay accrual. And to the extent you're looking at the complaint, the complaint alleges that he, that the physical injury had manifested itself at the time he was admitted to the  hospital, it alleges that he was taking NYSED medications, those medications were given to him by the defendants, such that he knew he suffered some sort of injury. Whether or not he knew the actual cause, well, that, it doesn't require actual knowledge of the cause. It's whether or not, whether or not you know enough of the factual, of the factual basis of the injury. Here he knows, based on the allegations of, in his complaint, that he was prescribed for NYSEDs, he knows defendants were prescribing NYSEDs, the physical injuries resulting from, allegedly, the prescription of those NYSEDs had manifested, but then he argues afterwards, or he states afterwards, I was on a ventilator. So I couldn't diligently pursue my rights. That's, that's equitable tolling. That's an argument that, although I was aware of the injury, although I, I knew something was wrong, I was prevented from, you know, diligently pursuing whether or not the injury had caused that injury. And we know for accrual purposes that you don't delay accrual until you know you have a cause of action, until you know that this was deliberate indifference. That's, that's, that's Kubrick. You don't need to know that you have a cause of action. You just need to know enough of the basic facts surrounding the injury. And here, when you have a. . . In the context. . . Well, the argument there would be he, he, he may, whether his cognitive abilities prevented him from diligently discovering the extent of his. . . No, no, no, I'm actually talking about knowledge. Are you saying that as a matter of law, someone who is barely conscious and is hallucinating knows anything? Well, I think. . . They actually fully knew the day he went into the hospital, right? Because. . . Or, or did he know during the hospital? What, where, what's your position on that? Well, he certainly knew that, that the physical injury had manifested. And with, with discovery. . . Well, he knew, he knew he was, he knew a injury. He knew that he was sick, right? So how did he know that he was injured? Well, he, he knew that he had been. . . He knew that something was wrong.  He knew that something was wrong. And he was under, he was under the care of the defendants. He was taking daily prescriptions from them. Nyseds, which, generally speaking, can have, can cause stomach. . . Are you asking us to create a per se law that says that if someone is taking medicine that they have to presume that any injury that happens while they're taking medicine has to be attributable to the medicine? No. We're, we're, we're not asking for any per se rule. We're, we're, we're stating that under the allegations of the complaint, that he was, he was a former gastric bypass patient. He's taking a medication. He's under medical care of the defendants. The physical injuries manifest themselves. And a lot of times a delay in a pool is because the latent injury hasn't manifested yet. It has here. Now, the basic facts. . . And he didn't suddenly start hallucinating. And that's the first occasion on which he had notice of any problem. He's feeling pain. He's experiencing things before the condition reaches the point where he's having to be taken to intensive care. Certainly he's. . . At that point, he should be aware. He knows or has reason to know of the injury that forms the basis of his claim. I don't think that he needs to have actual knowledge that the defendants were deliberately indifferent. That's, that's, that's knowledge that he has a cause of action. That's knowledge that he, that the plaintiffs were deliberately indifferent. And that's a legal theory. He knows enough at that point. I mean, the first question, given the severity and suddenness of the injury. . . The first question is what caused this? How did, you know. . . And his argument that, well, after I experienced the physical manifestations of this injury, I had trouble discovering the cause because I was in the hospital, I was on a ventilator. That's an equitable tolling argument, which he did argue. He actively pursued that theory. He pursued that theory because he thought, well, you know, you should toll the statute of limitations because I couldn't really get to the bottom of this, even though the information was available to me. No one, no one is disputing that he made an equitable tolling argument and it might not be well-founded, right? I don't think anybody's disputing that. I mean, we are having this hearing because we're focused on, or this argument because we're focused on the statute of limitation issue. Correct. But the only point I'm emphasizing is that to the extent we're looking at events after, not only he knows he's been taking the medication, he knows the physical injury has manifested, that after the fact he was on life support, my point is that those look like tolling arguments as opposed to whether or not the accrual date should be delayed. He had enough of the basic facts at his disposal. This wasn't, the defendants weren't hiding their actions, as in some of these cases where you delay accrual. This wasn't a case where it would be unreasonably difficult for him to find causation. He himself testified at the hearing, I looked it up and I found out you shouldn't take Nyseds. He knew he was taking Nyseds. He looked it up, though, after he got out of the hospital. Right. And then he asked, well, you know, could I have some extra time for the time I was a little bit, I was incapacitated. That's a tolling argument again. Delaying accrual would be, you know, the discovery rule often applies when the injury hasn't manifested itself because maybe something's going on and likely here maybe something, some injury was happening throughout the two and a half years he was taking medication, but it hadn't manifested yet. So we allow some time until the injury manifests. And if the facts about causation are in the exclusive control of the defendants, well, it's unreasonably difficult to understand causation. Here, even based on the allegations in the complaint, the physical injury had manifested before he was on life support and he knew enough of the basic facts about causation such that this wouldn't be a discovery accrual rule, but it would be an equitable tolling argument. What you're suggesting is that his being in the ICU in a state of, let's assume for the sake of this argument, total incapacity to communicate or know what's going on is something of a red herring because before he got to that stage, he was suffering. He was aware he was suffering. He was aware that he had had gastric bypass surgery. He was aware that he was being prescribed certain medications that at least is somewhat known are potential stomach upsetters. And that's good enough already for accrual. Well, yes, Your Honor, because, you know, that's just the accrual date. He has three years to exercise diligence to determine. It's sort of like if I'm in a car accident and I'm aware that I was in an auto accident and was injured and then I pass out, I don't really know whose fault it was. But the injury accrues at the time of the accident, not after I recover in the hospital and talk to some witnesses and find out that the other guy ran through a red light. Right. And sort of as you pointed out, Judge, what if he was fine in the hospital and just never looked into it? He just assumed, okay, well, it's good to be healthy again. Does accrual then delay for the years until he decided or maybe a doctor in the future said, you know, it looks like you were taking Nysets a few years back, and that might have been what caused it. Does accrual then delay until he has that conversation? I think at the time the injury manifests itself, enough of the basic facts surrounding that injury were available. And to the extent he wants to argue his condition thereafter prevented him from maybe discovering actual knowledge of some specifics, that's a tolling argument, and that's what he pursued. And so, you know, it's our position, one, that this is forfeited, but, two, even if you look at this, it doesn't require delaying accrual. Could you briefly describe for my benefit the evidentiary record? That is, what kind of a hearing has the plaintiff had and when? The hearing was on the issue of his cognitive abilities at his time in the ICU, which was from July 27, 2016, until September 18, 2016. A lot of the evidence that was presented at that hearing were medical records that detailed his cognitive abilities. So it was a medical record. That was a hearing before the magistrate judge? That was a hearing before Judge DiAgostino. Before Judge DiAgostino. Okay. Who, again, as you pointed out, she had said, and you can look at the transcript, she understands that the accrual date is set at that point, and we're looking at whether or not this period of time should be told because of his cognitive abilities. But, as she pointed out, and she did allow evidence on what may have prevented the plaintiff from diligently pursuing his claim even after the ICU. As she pointed out, he provides nothing to suggest he was diligently pursuing his rights thereafter, and he had two years and ten months, roughly, to file this claim. So... Well, thank you very much. Thank you. We ask that you affirm. Mr. Carle has reserved a bit of time. Thank you, Judge Prince. Let me start with a point of agreement. I do agree with Mr. Mix that Orlando doesn't have to know he has a claim. He has to know he's injured. And to take your point, Judge Lynch, the car accident one is kind of an easy one in the sense that if you're in a car accident and you pass out, there's a pretty good chance somebody messed up and that someone's at fault for having caused that accident. In this case, we don't have that evidence. What we have is that he knows he's sick, he's vomiting, he gets taken to the hospital, he has emergency surgery, and he's out for about six weeks or thereabouts. That's not the same thing. And there's certainly no proof before Judge D'Agostino that he knew that he was injured in your sense of the car accident sense rather than the I'm sick part. Let me address one other thing. If someone's name, because you haven't filed a notice of appearance, is not on the docket sheet, you're not somebody's lawyer. And you can't or you shouldn't punish someone and say, well, there was a lawyer in the wings. He was hanging around that Albany courthouse or the Albany Medical Center and gave Erlano some advice. I don't know. You don't know. Nobody knows. If you're on the docket sheet, that's one thing. If you're somewhere else, it doesn't count. And I should say, I think this court, district courts are pretty clear about this. If you give someone advice, you put it in a notice of appearance so you don't have this problem. As of now, Erlano, when the case is before the magistrate, is, as document number 27 says, plaintiff-prosec. Anything else, Your Honors? Thank you very much. Thank you very much, Judge Cabranes.